ALFRED INGRAHAM AND GEORGE READ, ASSIGNEES IN TRUST OF THE GRAND GULF RAILROAD AND BANKING COMPANY, APPELLANTS, *v.* HENRY S. DAWSON, ADMINISTRATOR OF MOSES GROVES, DECEASED, JOSIAH STANSBROUGH, AND JOHN R. MARSHALL.

Where there were proceedings in a State court between a bank, one of its creditors, and one of its debtors, and the bank having failed, assigned its assets to trustees, who intervened in the dispute between the other two parties, the judgment of the State court against the intervenors must be considered final, and a bill filed by them in the Circuit Court of the United States must be dismissed.

If there were irregularities in the proceedings of the State court, it was for that court to correct them, had complaint been made at the proper time.

THIS was an appeal from the Circuit Court of the United States for the eastern district of Louisiana.

*Ingraham et al.* v. *Dawson et al.*

The facts in the case are fully stated in the opinion of the Circuit Court, which the reader will find referred to in the opinion of this court, as constituting a part of the statement of this report. It is therefore transcribed from the record, and was as follows:

*Opinion of the Circuit Court.*

The facts of this case are, that in May, 1841, the Grand Gulf Railroad and Banking Company, of Grand Gulf, Mississippi, recovered two judgments against Moses H. Groves, for the aggregate sum of twenty-two thousand six hundred and thirty-eight and forty-three hundredths dollars, with arrears of interest and costs.

Prior to this event, the bank had suspended specie payments, and in February, 1842, made a general assignment of its effects to the plaintiff, Ingraham, and one Lindsay, (of whom the plaintiff, Read, is the assignee or successor,) to be collected and appropriated—1st, to the expenses of the trust; 2d, to pay off judgment creditors; 3d, to indemnify and save harmless the sureties or guaranties of any engagement for the bank; and 4thly, to make an equal distribution among the remaining creditors.

The trustees accepted their appointment, and in 1842 notified the curator of the debtor, Groves, (H. H. Groves,) that these judgments had been assigned to them.

In the month of June, 1843, the defendant, John R. Marshall, a bill holder of the bills of the Grand Gulf Banking Company, commenced two suits by attachment in the District Court of the parish of Madison, against that corporation, upon the bills of the bank, and recovered a judgment upon the two suits, (which, during their progress, had been consolidated,) for the sum of four thousand three hundred and ninety-five dollars, with arrearages of interest and costs.

The sheriff (among other property) attached the two judgments against Groves by an entry of the fact upon the attachment, and by notice to H. H. Groves, administrator.

The Grand Gulf Banking Company appeared to the said suit, and defended it, and Ingraham and Read intervened, claiming through their assignment the property attached, and "opposing the plaintiff's demand to claim the property attached."

To the intervention Marshall answered, denying the authority of the bank to make an assignment, and averring that the assignments were fraudulent and void, designed to favor a portion of the creditors, and insisted upon the right of the attaching creditor to dispose of the effects seized, notwithstanding the assignment.

A suspensive appeal was taken, immediately after the signature of the judgment, to the Supreme Court of the State, by the bank and the assignees, (intervenors,) and a judgment of affirmance was rendered in that court. This was entered upon the minutes of the District Court for Madison, in November, 1845. In December thereafter, an execution issued to the sheriff, and, in due course of law, these judgments were sold, in April, 1846, at public sale, when Marshall, the plaintiff, became the purchaser. He transferred his title to his codefendants by a public act, in February, 1847.

To a full understanding of the facts and arguments, it is proper to set forth the proceedings in the Circuit Court of Claiborne county, Mississippi, to enforce a forfeiture of the charter of the bank. In September, 1845, a judgment of partial forfeiture was entered, reserving the right to sue, and collect debts, with a view to the settlement of the affairs of the bank; and on the 17th April, 1846, a final judgment in that court, forfeiting the whole charter, was entered.

This was suspended by appeal, and affirmed in the Supreme Court, in 1848, shortly before this suit was commenced.

This suit was commenced to enforce the rights of the assignees, under their assignment, to the judgments rendered against Groves in 1841. The jurisdiction of chancery is asserted as a consequence of the destruction of the legal character of the corporation, and upon the allegations, that the judgment of Marshall was obtained with a full notice of the title of the assignees, and that the parties who claim those judgments have acted fraudulently and collusively in obtaining a title to them through the action of the courts of Louisiana.

The jurisdiction of the court was supported by my predecessor in this court in 1850, in determining the demurrer to the bill.

The case then rests upon the respective titles exhibited in the bill and answers. There is no support for the allegations of fraud or collusion in the evidence. The only questions to be considered are, whether the proceedings upon the attachment of Marshall divest the title of the bank to the judgments in favor of the defendants, and whether the plaintiffs have confirmed that title by their conduct at the sale.

The bank and the intervenors were parties to the proceedings and judgment of the attaching creditor. They appeared for their respective interests in the subject of the suit, and contested the validity of the creditor's claim to his debt and satisfaction from the property. Whatever judgment was rendered in that suit is conclusive upon them.

The judgment entry recites that a jury was empanelled,

the evidence closed, the case argued, the jury retired to deliberate upon their verdict, returned into court with their verdict, which was read, agreed to, and ordered to be recorded.

The verdict is for the plaintiff, against the defendant, for his debt and interest. It proceeds to declare that the intervenors have established no evidence of their claim to the property as set forth in their petition. Thereupon the court gives judgment, that the plaintiff recover of the defendant his debt and interest, specially setting out the items composing both.

"It is further ordered, that the property, rights, and credits attached be sold, according to law, to satisfy the judgment and cost of suit; and that the plaintiff have a preference and privilege thereon; and that the demand of the intervenors be rejected, with cost of suit."

This, it was said, was "done and signed in open court, this 9th May, 1844, after overruling the motion for a new trial.

E. R. MILLSON, *Judge.*"

It will hardly be contended that this is not a final judgment on the merits, conclusive between the parties. (Keene *v.* McDonough, 8 La., 187.) The parties who are now before this court, were parties to the record in that suit. The plaintiffs here, were there, claiming to have a better title to the money, due upon the judgments of Groves, than Marshall, the attaching creditor, by virtue of their deed of assignment from the bank. The bank was before the court, affirming the title of their assignees; Groves was before the court as a stockholder; Marshall was before the court, claiming his preference. This preference is declared, the judgments are ordered to be sold, and the claim of the plaintiff is dismissed. It is the title of Marshall and his assigns, under this judgment, that is now impeached, and impeached as inferior to the claim then rejected. All the conditions required by the code to give force to this judgment, as a *res judicata,* appear here, (C. C., 22, 65.) But the plaintiff insists that this is not the judgment rendered in the cause. He produces evidence to show that the entry on the minutes contains the words "as in case of nonsuit," after the words of rejection of the intervenors' claim, and with the addition of those words, there is no *res judicata.*

The authorities of the Code of Practice of the decisions of the Supreme Court are clear, that the minute entry is not a judgment. The Supreme Court will not entertain an appeal from a judgment which has not been transferred to the book of judgments, and signed by the judge; and the courts of original jurisdiction are not authorized to issue an execution upon such an one.

The judgment entries on the minutes do not form *res judicata.* They cannot be looked to to impeach, vary, or in anywise to affect the judgment, signed by the judge, in any collateral proceedings. (The State *v.* McDonald, 17 La. R., 485; *Ex parte* Nichall, 4 Ran., 52; 1 Am., 206; 3 Am., 62.) Considering the records of the District Court of Madison only, there can be no question that the only operative judgment is that I have first described.

The question which arises upon the record of the Supreme Court is one of more difficulty. In the transcript placed before that court, upon the appeal of the intervenors and the bank, the judgments were copied from the minute entry, and the signature of the judge superadded. It appears there, that the claim of the plaintiff (intervenors) was rejected with costs, "as in case of nonsuit," and no mention is made of the refusal of a new trial.

In the Supreme Court, the case was disposed of upon its merits. The court does not notice the objections to the rejection of the evidence of the intervenors, (the deed of assignment,) upon which their title depended, and without which the title of the assignees must necessarily fail, on their intervention in the District Court. The Supreme Court takes no notice of the fact that the assignment was not admitted as evidence upon the trial in the District Court. It treats the assignment as a part of the evidence, and allowed the plea of prescription against the claim of the attaching creditor to impeach it, to be filed in that court. It is difficult to refer the opinion to the case made on the record.

It may be, as is suggested at the bar, that the case was submitted with a knowledge of the condition of the judgment in the District Court, and with a view to a decision on the merits; or that the Supreme Court regarded the words "as in case of nonsuit," added to a judgment, when there had been a trial and verdict, without significance; or that the court, finding there had been a trial, a condemnation of the property attached to be sold, and the preference and privilege of the creditors declared, supposed them sufficient to modify the import of those words, and that it understood the judgment to conclude the parties, at least to the extent of this debt, leaving the rights unimpaired as to other parties. I should have great difficulty with the case, were there no other circumstances to affect it.

The general rule in Louisiana is, no matter what form of action or proceeding, whether by petition, or exception, or intervention, the question may have been presented, if the same question once judicially decided between the same parties be again agitated, it is sufficient to create the presumption resulting from the thing adjudged, and forms a complete bar.

Plecque *v.* Perrett, 19 Lou., 328.　I agree that "the reasons for the judgment" given by the Supreme Court, and spread upon the record, in accordance with the Code of Practice, (art. 909,) are not to be taken as the judgment.　But when the import of the judgment is equivocal or ambiguous, the opinion is important in determining the limits of the *res judicata.* (Plecque *v.* Perrett, 19 Lou., 328; 5 Am., 200; 3 Am., 202; 6 Ala. R., 141.)　But, to determine the value of the title of the respondents, we must not confine our observation to the record of the Supreme Court.

The Code of Practice prohibits the issuing of an execution upon judgments from that court; whether the judgments there be of affirmance or reversal, the execution is devolved upon the court of original jurisdiction.　It directs that the judgments shall be recorded in the court of original jurisdiction before they are executed, and the order to record the judgment must be moved for in open court, by the party desirous of execution, and after that an order for execution may be obtained from that court.　(Cod. Pr., 615, 617, 618, 619, 623.)

These acts were performed in this case.　The record from the Supreme Court consisted of the opinion, such as I have described it, where the merits of the title through the assignment are carefully examined, and pronounced insufficient to defeat the attachment, and concluding with the announcement that "the judgment of the District Court is therefore affirmed with cost," and thereupon an order for execution was made by the District Court.

What was then the condition of the record of the District Court?　The original judgment for the attaching creditor against the bank and intervenors, finding a debt, condemning the property attached to be sold, declaring a preference and privilege in favor of the creditor, and rejecting the claim of the assignees, bearing the signature of the judge, was there, and from that an appeal had been allowed.

Then, there was an opinion vindicating that judgment, by a careful examination of the assignment of the bank, and pronouncing its invalidity as against the attaching creditor.　Then came the confirmatory order, which the District Court could refer to nothing but the judgment above described, and finally the order of execution.

There was nothing to indicate a variance between the transcript in the Supreme Court and the legal entry of judgment in the District Court.　No inquirer could apply the confirmatory order to other than this judgment.

Upon this condition of the record, the execution under which the sale was made was levied, the property appraised and sold.

The seizure notice to the defendant's attorney and the appraisement were within the legal delays, and the sale, after the return day of the execution, was permissible. (Dorsey *v.* Carrolton Bank, 5 Am., 237; Rowley *v.* Kemp, 2 Am., 361.) The inquiry remains, what title did the purchaser take by the sale and conveyance of the sheriff? The purchaser is not bound to look beyond the decree, when executed by a conveyance, if the facts necessary to give the court jurisdiction appear on the face of the proceedings, nor to look further back than the order of the court. If the jurisdiction was improvidently exercised, or in a manner not warranted by the evidence before it, it is not to be corrected at the expense of the purchaser, who had a right to rely upon the order of the court as an authority emanating from a competent jurisdiction. (10 Pet. S. C. R., 450, 478.) The defendant, Marshall, was a creditor, pursuing what he considered to be his legal right, what the courts had pronounced to be a legal right, to satisfaction for his debt from judgments standing in the name of his debtor upon the records of the court where his suit was commenced. By his purchase, he cancelled his debt against the defendant, and assumed the burden of paying the costs of the suit. I have no evidence of fraud or collusion in the sale, or of any inadequacy of price. But there is evidence that the sale was open and public, and fairly conducted. Nearly a year after, he conveyed to other purchasers. They were required to see the judgment on the records of the District Court, and there was nothing there, except what inspired confidence in the title they undertook to purchase. They saw an absolute and unqualified judgment, rejecting the claim of the assignees of the bank, and condemning the effects attached to sale. They saw no entry to annul or modify that judgment, but, on the contrary, one affirming it in all its parts, with reasons of its propriety, convincing to the highest court of the State.

The questions, whether the attachment had been legally levied, or whether the property seized was a subject for the satisfaction of the attaching creditor's demand, were involved in the issues tried, and the order for an execution of the judgment was given after a review of all the claims of the bank or its assigns. The subject for sale were judgments on the records of the court that gave the order, and all persons entitled to oppose it were before the court. The purchaser was entitled to make the purchase, with an assurance that his title would be respected.

Nor were the purchasers advised, by any act of the assignees, that there was peril in the act of purchase, or that the sale was a derogation of their rights.

The evidence is satisfactory that the principal assignee was at the sale, and before, and at the time, encouraged purchasers to buy. The assignees were interested in this, for the claim of the attaching creditors was a charge upon the assets that might come to their hands, and its payment was a diminution of the debts they were required to pay.

Three years elapsed from the entry of the unconditional and unexplained order of affirmance of the judgment of the District Court, upon the records of the District Court, before this suit was commenced. No effort was made during that time to harmonize the conflict in the various and discrepant entries in the courts of original and appellate jurisdiction, by direct applications to them.

No effort has been made by the assignees to enforce the judgments they claim in the court where they were rendered, and which has assumed to dispose of them, nor to correct the irregularities of the officers of which they now complain.

The titles which have been granted under the orders of the court, and the acts of the officers, are impeached in a court of an independent and separate organization, and in a collateral proceeding.

The attempt is made, not by an application to the ordinary jurisdiction of the court, but to its extraordinary powers, powers which do not become active against conscience or public convenience, and when there has not been good faith and reasonable diligence.

My conclusion is, that the plaintiffs have not made such a case as authorizes the interposition of a court of equity for their relief.

The record shows a final judgment of the court of original jurisdiction against their title. That upon their own appeal an erroneous transcript of that judgment was carried to the Supreme Court, and is to be found there with the rest of the case. But that this was not carried to the book of records of the Supreme Court, nor copied into its opinion, nor recited in its final order, nor do the reasons for the judgment in the Supreme Court depend upon its restricted language of the judgment exhibited in the transcript, nor does the decretal order of the Supreme Court recite or relate to it.

But the opinion of the court depends upon a judgment, such as existed on the record of the District Court, and the confirmatory order was addressed to that judgment.

This opinion and this confirmatory order were spread upon the records of the District Court, and form the basis of the executory orders and proceedings. Rights have attached under those proceedings and orders, not only without opposition, but

with the solicitation and consent of the plaintiffs. This court does not feel at liberty to disturb them, by an inquiry into the supposed errors or irregularities which may be found in the various entries and proceedings of the State tribunals.

Bill dismissed with costs.

(Signed)                    J. A. CAMPBELL,
                              *Assoc. Justice S. C. U. S.*

It was argued in this court by *Mr. Strawbridge* and *Mr. Reverdy Johnson* for the appellants, and by *Mr. Benjamin* for the appellees.

Mr. Justice CATRON delivered the opinion of the court.

This is a suit, by bill in equity, that was prosecuted in the eastern district of Louisiana, by Ingraham and Read, as assignees in trust of the Grand Gulf Railroad and Banking Company, against Dawson, administrator of Moses Groves, John R. Marshall, and Josiah Stansbrough. The cause was pending in the court below for several years, and in its various details is complicated, but the point presented for our consideration is a narrow one.

According to the practice in Louisiana, the Circuit Court delivered a carefully-prepared opinion on the final hearing there, setting forth the facts and reasons why that court dismissed the bill. The opinion will be found in the preceding report of this cause. We briefly restate the facts on which our judgment proceeds:

In May, 1841, the Grand Gulf Bank recovered two judgments against Moses Groves, in the District Court of the parish of Madison, in the State of Louisiana, amounting in the aggregate to more than twenty-two thousand dollars. Groves died without having satisfied those judgments, and the assignees by this bill seek to enforce payment of the debt from the estate of Groves, in the hands of his administrator.

The Grand Gulf Banking Company having failed, in February, 1842, assigned its assets in trust to Ingraham and Lindsay, including the two judgments against Groves. Lindsay afterwards died, and Read is his successor. This is the title relied on by the complainants. The defence set up depends on the validity of a sale of said judgments by legal process against Groves.

Marshall was the owner of a large amount of bank notes put in circulation by the Grand Gulf Company. In June, 1843, he instituted a suit against the bank on these notes, by attaching the judgments the bank had recovered against Groves, (and also judgments against other persons.) The suit was

prosecuted in the District Court of the parish of Madison, in Louisiana. To this proceeding the present complainants, Ingraham and Read, as assignees of the bank, intervened and set up their title by the assignment of the judgments, for the purpose of defeating the attachment of Marshall, and of having their claim as trustees established as the better title. Marshall responded to this allegation of the intervenors, that the deed of assignment was void: first, because it was contrary to the express law of Mississippi, prohibiting such assignments; and secondly, that it was void, because it was made for the purpose of defrauding a portion of the bank's creditors, and in order to favor others. The parties really contesting were Marshall and the intervenors. They went to trial before a jury on the law and facts. The verdict found, first, that the debt was due to Marshall from the bank; and, secondly, (says the record,) "we of the jury find the intervenors in the case have established no evidence of their claim to the property, as set forth in the petition."

The judgment recites that the verdict was in favor of the plaintiff, Marshall, and against the defendants and intervenors; declares the amount due to the plaintiff; adjudges a preference and privilege upon the property, rights, and credits attached; orders them to be sold, according to law, to satisfy the plaintiff's judgment. "And it is further ordered and decreed, that the demand of the intervenors be rejected with costs."

This judgment was affirmed in the Supreme Court of Louisiana on appeal, prosecuted on the part of the bank and the intervenors. The judgment as affirmed was duly entered in the District Court, which proceeded to execute the same.

The bill seems to have been founded on the supposition that the intervention was rejected, and the intervenors nonsuited in the District Court; and that therefore they were not concluded, and at liberty to pursue their claim on the deed of assignment made to them by the Grand Gulf Bank.

The assumption that the intervenors were nonsuited in the State court is founded on a supposed record furnished to the complainants by the clerk of the District Court, which probably might bear this construction; but it appears that no such *record* exists in that court, and that a copy of a memorandum, kept in a book to refresh the memory of the clerk from which the record signed by the judge was made, is the writing relied on. The memorandum has no value in this cause. The judgment above recited defeated the assignment set up by the complainants in their petition of intervention, and in terms bound the property attached; nor could a court of the United States, in a suit by bill in equity, call in question the informalities, if

any exist, that may have occurred in executing the judgment of the State court. It was the duty of that court to correct any misconduct or mistake on the part of the sheriff in conducting the sale of the judgments, had complaint been made in time and proper form.

We concur with the Circuit Court, that the bill must be dismissed, and so order.